1  Michael A. Slater, Esq. (SBN 318899)
   **THE SLATER LAW FIRM, APC**
2  515 South Flower Street, 18th Floor
   Los Angeles, California 90071
3  E-mail: mslater@theslaterlawfirmapc.com
   Tel: (818) 645-4406
4
5  Attorneys for Plaintiff, K.O.

6

7  UNITED STATES DISTRICT COURT

8  CENTRAL DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10 K.O., a minor, by and through her Guardian Ad Litem, NICHOLAS OWES, | CASE NO.: |
| 11 | **COMPLAINT FOR DAMAGES FOR:** |
| 12 Plaintiff, vs. | (1) Violation of the Right to Bodily Integrity (42 U.S.C. § 1983) |
| 13 MONROVIA UNIFIED SCHOOL DISTRICT, a California public entity; TOM MCFADDEN, in his individual capacity; MISTYROSE BRAVO, in her individual capacity; and DOES 1 through 25, inclusive. | (2) Violation of the Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1) |
| 14 | (3) Battery |
| 15 | (4) Intentional Infliction of Emotional Distress |
| 16 | |
| 17 Defendants. | (5) Negligent Supervision |
| 18 | **DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff K.O., a minor, by and through her Guardian ad Litem, Nicholas Owes, for her Complaint for damages against Defendants Monrovia Unified School District, Tom McFadden and MistyRose Bravo (collectively, "Defendants"), alleges as follows:

## THE PARTIES

1. Plaintiff K.O. ("Student") is a citizen of the United States who, at the

time of the violations of law alleged herein resided, and at the present time continues to reside, with her father, Nicholas Owes, in the City of Monrovia, California—which is located within the jurisdictional boundaries of the Monrovia Unified School District and the County of Los Angeles. At all times relevant herein, and at the present time, Student was, and continues to be, a minor having been born in 2018

2. Nicholes Owes ("Student's Father") is a citizen of the United States who, at the time of the violations of law alleged herein, resided, and at the present time continues to reside, with Student in the City of Monrovia, California. Student's Father brings this action as Guardian Ad Litem for Student.

3. Monrovia Unified School District ("MUSD") is a public entity duly organized and existing under California law as a school district. MUSD is located within Los Angeles County, California.

4. Defendant MistyRose Bravo ("Teacher") is an individual who, at the time of the violations of law alleged herein, was employed by Defendant MUSD as a teacher at the Canyon Early Learning Center. At the time if the violations of law alleged herein, Teacher was acting within the course and scope of her employment with the MUSD. Teacher is being sued in her individual capacity. Based on information and belief, Teacher is a resident of Los Angeles County.

5. Defendant Tom McFadden ("Director") is an individual who, at the time of the violations of law alleged herein, was employed by Defendant MUSD as the Director of the Canyon Early Learning Center ("CELC"). At the time if the violations of law alleged herein, Director was acting within the course and scope of his employment with the MUSD. Director is being sued in his individual capacity. Based on information and belief, Director is a resident of Los Angeles County.

6. Student is ignorant of the true names and/or capacities of Defendants sued herein as DOES 1 through 25, inclusive, and therefore sue said Defendants by such fictitious names. Student will amend this Complaint to allege the true names and capacities when ascertained. Student believes and alleges that each of the DOE

Defendants is legally responsible and liable for the incident, injuries, and damages hereinafter set forth. Each DOE Defendant proximately caused injuries and damages because of his/her negligence, breach of duty, negligent supervision, management or control, and violation of public policy. Each DOE Defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care, or control or upon any other act or omission.

## JURISDICTION & VENUE

7. This Court has original jurisdiction over Student's federal law claims under 28 U.S.C. sections 1331 [federal question jurisdiction] and 1343(a)(3) [federal civil rights jurisdiction]. All claims for violations of Student's rights under the United States Constitution are brought pursuant to 42 U.S.C. section 1983. This Court has supplemental jurisdiction over Student's state law claims under 28 U.S.C. section 1367.

8. Venue is proper in this judicial district under 28 U.S.C. section 1391(b)(2), because a substantial part of the events or omissions giving rise to the Student's claims occurred in this judicial district.

9. Pursuant to the California Tort Claims Act, Student presented a tort claim to the MUSD within six months of the violations of law alleged herein, which the MUSD rejected on July 28, 2022.

## FACTUAL ALLEGATIONS

10. In or about mid-January 2022, Teacher MistyRose Bravo told Student's Grandmother, Mindy Owes ("Student's Grandmother"), that Student would need to stay home from CELC for one day due to certain digestive issues Student was experiencing. Student's Grandmother agreed and told Teacher that Student must not be given milk at CELC because milk was likely either causing or aggravating Student's digestive issues. In response, Teacher told Student's Grandmother: "Milk is what we serve for lunch. All students drink milk. Do you have a doctor's note

regarding [Student] having an allergy?" Student's Grandmother told Teacher that she did not need a doctor's note to justify her request that Student not be given milk. Notwithstanding Student's Grandmother's clear directive, in or about late-January 2022 or early-February 2022, on at least one occasion Student was given milk at CELC. (The "Milk Incidents.")

11. Soon after the Milk Incidents, Student's Grandmother told CELC Director Tom McFadden about the Milk Incidents, Director responded: "We are not in the business of forcing students to drink milk. I'll talk to [Teacher]."

12. On or about the last week of February 2022, at CELC, Student was sitting on a classroom floor playing with toys together with her CELC classmates when one of Student's classmates ("Classmate") sat on Student's legs. Student called out for help to the substitute teacher who was supervising the classroom at the time (Teacher was not at CELC at the time), and the substitute teacher intervened. However, even after the substitute teacher intervened, Classmate sat on Student's legs an additional time. (The "Sitting Incident.") This was not the first time Classmate had acted aggressively towards Student. Indeed, Classmate had bullied Student numerous times before the Sitting Incident.

13. When Student returned home after the Sitting Incident, Student told Student's Father and Student's Grandmother (collectively, "Student's Family"), about the Sitting Incident. Concerned for Student's safety and general wellbeing at CELC, Student's Grandmother reported the Sitting Incident to Teacher. Teacher was dismissive of Student's Grandmother's concerns and told her that "none of [her] students are aggressive." Teacher nonetheless indicated she would "look into" the Sitting Incident. Several days later, Teacher told Student's Grandmother that Student and Classmate were "just playing" when the Sitting Incident occurred.

14. On or about the first week of March 2022, at CELC, Student was sitting on a classroom floor after dancing with her CELC classmates when Classmate intentionally stepped on the back of Student's hand, injuring Student. (The "Stepping

Incident.") Indeed, Student's hand hurt for several weeks as a result of the Stepping Incident.

15. When Student returned home after the Stepping Incident, Student told Student's Family about the Stepping Incident. Student's Family grew even more concerned for Student's safety and general wellbeing at CELC, since neither Teacher nor anyone else at CELC appeared to be taking Classmate's bullying behavior seriously or taking measure to protect Student from Classmate. When Student's Grandmother reported the Stepping Incident to Teacher and asked that steps be taken to protected Student from Classmate—including separating the two when possible—Teacher said that it was not possible for her to monitor her students at all times.

16. Several days after the Stepping Incident, Student's Grandmother reported the Sitting Incident and the Stepping Incident (the "Incidents") to CELC Director Tom McFadden, who indicated that he had only been informed about the Sitting Incident but had not been informed about the Stepping Incident. When Student's Grandmother asked Director why Teacher would not tell Director about the Stepping Incident, Director told Student's Grandmother that Student would have to be "regulated." Student's Grandmother voiced her concern to Director that Teacher was neither taking steps herself to ensure Student's safety at CELC nor reporting all incidents to others at CELC—including, but not limited to, the Director—who may themselves take steps to ensure Student's safety at CELC. Director told Student's Grandmother that he would talk to CELC personnel about the Incidents, without indicating specifically what steps he would take to ensure Student's safety.

17. When Student returned home from CELC on March 24, 2022, Student's Family observed that Student's voice was uncharacteristically hoarse and that Student appeared dejected and emotionally distressed. Student's Family asked Student if something had happened to Student at CELC and, on March 25, 2022, Student told Student's Family that Teacher had violently grabbed and squeezed

Student's neck at CELC the previous day, during which time Teacher called Student a "bitch." Student told Student's Family that she was very scared because she could not breath while Teacher was choking her. (The "March 24 Choking Incident.")

18. Upon Student's Family's further questioning, Student told Student's Family that Teacher had also choked Student before the March 24 Choking Incident, including in February 2022. (Collectively, the "Choking Incidents.") Indeed, Student's Family had noticed that Student's voice was uncharacteristically hoarse on numerous occasions in February 2022. Student experienced and continues to experience severe emotional distress as a result of the Choking Incidents.

19. Student and Student's Family suspect that Teacher choked Student in retaliation against Student's Grandmother for the complaints Student's Grandmother made to Teacher directly—including about the Milk Incidents, the Sitting Incident and the Stepping Incident—as well as for the complaints Student's Grandmother made to Director about Teacher.

20. On numerous occasions before the March 24 Choking Incident, Student told Student's Family that she was scared to make Teacher "mad."

21. On information and belief, Teacher was placed on administrative leave because of the March 24 Choking Incident.

22. As a result of the Choking Incidents, Student's Family unenrolled Student from CELC.

## FIRST CLAIM FOR RELIEF

**Violation of the Right to Bodily Integrity (14th Amendment | 42 U.S.C. § 1983)**

**(Against MistyRose Bravo and DOES 1 through 25)**

23. Student incorporates all of the foregoing allegation of this Complaint as though fully set forth herein.

24. The Fourteenth Amendment to the United States Constitution guarantees Student the constitutional right to be free from violations of her bodily integrity, including to be free from physical abuse by Teacher.

25. On March 24, 2022, Teacher violently grabbed and squeezed Student's neck at CELC, during which time Teacher called Student a "bitch," and during which time Student could not breath. Teacher had also choked Student before the March 24 Choking Incident, including in February 2022.

26. Teacher's conduct during the Choking Incidents was egregious, outrageous and shocks the conscience.

27. As a proximate result of the Choking Incidents, Student experienced and continues to experience severe emotional distress.

## SECOND CLAIM FOR RELIEF

**Violation of the Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1)**

**(Against MistyRose Bravo, MUSD and DOES 1 through 25)**

28. Student incorporates all of the foregoing allegation of this Complaint as though fully set forth herein.

29. Through the Choking Incidents, Teacher interfered with Student's Fourteenth Amendment right to be free from violations of her bodily integrity guaranteed by threats, intimidation and/or coercion.

30. Through the Choking Incidents, Teacher had the specific intent to interfere with Student's Fourteenth Amendment right to be free from violations of her bodily integrity. Teacher intended to the use the force she employed during the Choking Incidents, even though Teacher knew the force she employed during the Choking Incidents was unreasonable and more than necessary under the circumstances.

31. As a proximate result of the Choking Incidents, Student experienced and continues to experience severe emotional distress.

32. Teacher's violation of law alleged herein were committed within the scope of her employment with the MUSD. The Monrovia Unified School District is vicariously liable for state law torts committed by Teacher, including Teacher's violation of the Tom Bane Civil Rights Act as described herein, pursuant to

California Government Code section 815.2(a).

## THIRD CLAIM FOR RELIEF

### Battery

### (Against MistyRose Bravo, MUSD and DOES 1 through 25)

33. Student incorporates all of the foregoing allegation of this Complaint as though fully set forth herein.

34. On March 24, 2022, Teacher violently grabbed and squeezed Student's neck at CELC, during which time Teacher called Student a "bitch," and during which time Student could not breath. Teacher had also choked Student before the March 24 Choking Incident, including in February 2022.

35. Teacher's conduct during the Choking Incidents was intentional and meant to harm or offend Student.

36. Student did not consent to Teacher's choking of Student during the Choking Incidents.

37. Student was physically and emotionally harmed when Teacher choked Student during the Choking Incidents.

38. A reasonable person in Student's position would have been offended by Teacher's choking of Student during Choking Incidents.

39. As a proximate result of the Choking Incidents, Student experienced and continues to experience severe emotional distress.

40. Teacher's violation of law alleged herein were committed within the scope of her employment with the MUSD. The Monrovia Unified School District is vicariously liable for state law torts committed by Teacher, including Teacher's battery against Student as described herein, pursuant to California Government Code section 815.2(a).

/ / /

/ / /

/ / /

## FOURTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

### (Against MistyRose Bravo, MUSD and DOES 1 through 25)

41. Student incorporates all of the foregoing allegation of this Complaint as though fully set forth herein.

42. On March 24, 2022, Teacher violently grabbed and squeezed Student's neck at CELC, during which time Teacher called Student a "bitch," and during which time Student could not breath. Teacher had also choked Student before the March 24 Choking Incident, including in February 2022.

43. Teacher's conduct during the Choking Incidents was extreme and outrageous with the intention of causing, or with reckless disregard of the probability of causing, emotional distress to Student.

44. As a proximate result of the Choking Incidents, Student experienced and continues to experience severe emotional distress.

45. Teacher's violation of law alleged herein were committed within the scope of her employment with the MUSD. The Monrovia Unified School District is vicariously liable for state law torts committed by Teacher, including Teacher's intentional infliction of emotional distress against Student as described herein, pursuant to California Government Code section 815.2(a).

## FIFTH CLAIM FOR RELIEF

### Negligent Supervision

### (Against Tom McFadden, MUSD and DOES 1 through 25)

46. Student incorporates all of the foregoing allegation of this Complaint as though fully set forth herein.

47. CELC Direction Tom McFadden owes CELC students under his supervision—including Student, during the times of the violations of law alleged herein—a duty of care to ensure their safety while at CELC.

48. Director was on notice that Teacher was not taking steps to ensure

Student's safety while under Teacher's supervision, including but not limited to when Student's Grandmother reported Teacher's inaction with respect to the Milk Incident, Sitting Incident and Stepping Incident. Director was also on notice that Teacher and Student's Grandmother's relationship had become contentious and, therefore, that Teacher may retaliate against Student. Accordingly, Director should have but did not employ adequate safeguards to ensure Student's safety while under Teacher's supervision, even thought it was reasonably foreseeable that Student may be harmed while under Teacher's supervision.

49. As a proximate result of the Director's negligent supervision, the Choking Incidents occurred. As a proximate, Student experienced and continues to experience severe emotional distress.

50. Director's violation of law alleged herein were committed within the scope of his employment with the MUSD. The Monrovia Unified School District is vicariously liable for state law torts committed by Director, including Director's negligent supervision as described herein, pursuant to California Government Code section 815.2(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff K.O. prays for judgment against Defendants Monrovia Unified School District, Tom McFadden and MistyRose Bravo, as to each claim for relief as follows:

**AS TO THE FIRST CLAIM FOR RELIEF (**for violation of the right to bodily integrity under the Fourteenth Amendment):
1. For actual and special damages according to proof at trial;
2. For punitive and exemplary damages;
3. For reasonable attorneys' fees pursuant to 42 U.S.C. section 1988(b);
4. For costs pursuant to Federal Rule of Civil Procedure section 54(d); and
5. For such other relief as the Court deems just and proper.

**AS TO THE SECOND CLAIM FOR RELIEF** (for violation of the Tom Bane Civil Rights Act):

1. For three times actual damages according to proof at trial but no less than the statutory minimum;
2. For punitive and exemplary damages;
3. For reasonable attorneys' fees pursuant to California Civil Code section 52.1;
4. For such other relief as the Court deems just and proper.

**AS TO THE THIRD CLAIM FOR RELIEF** (for battery)
1. For actual and special damages according to proof at trial;
2. For punitive and exemplary damages; and
3. For such other relief as the Court deems just and proper.

**AS TO THE FOURTH CLAIM FOR RELIEF (**for intentional infliction of emotional distress):
1. For actual and special damages according to proof at trial;
2. For punitive and exemplary damages; and
3. For such other relief as the Court deems just and proper.

**AS TO THE FIFTH CLAIM FOR RELIEF** (for negligent supervision):
1. For actual and special damages according to proof at trial;
2. For punitive and exemplary damages; and
3. For such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Student hereby demands a trial before a jury on all triable issues presented in this Complaint.

Dated: September 11, 2022        THE SLATER LAW FIRM, APC

                                 By: */s/ Michael A. Slater*
                                    Michael S. Slater
                                    Counsel for Plaintiff, K.O.